IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| ROSALIA CEFALU | ) | |
|---|---|---|
| Plaintiff, | ) | No. 12 C 5995 |
| v. | ) | Hon. Michael T. Mason |
| JAMES ROCUSKIE AND JAMES HORN, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is plaintiff Rosalia Cefalu's ("plaintiff" or "Cefalu") post-trial motion [86]. In this case, plaintiff brought a claim for false arrest against two police officers, James Rocuskie and James Horn ("defendants"). The case was tried before a jury on November 19 and 20, 2013. The jury found in favor of both defendants. For the reasons set forth below, plaintiff's post-trial motion is denied.

**I.  BACKGROUND**

Shortly after midnight, on April 15, 2011, Cefalu was a passenger in a black Jeep traveling in the Village of Glenview, Illinois. At 12:03 am, Officer Rocuskie pulled up behind the Jeep at a red light. After he noticed that the Jeep had expired license plates, Officer Rocuskie initiated a traffic stop. Once the Jeep was pulled over, the driver of the vehicle, Ron Allen (who was Cefalu's boyfriend at the time) provided Officer Rocuskie with two different vehicle registrations, both of which Officer Rocuskie noted were unusual. When Officer Rocuskie called this information in, he was informed that the vehicle was reported stolen. Officer Rocuskie then placed Allen under arrest and

1

Officer Horn, who had arrived at the scene, placed Cefalu under arrest. Officer Horn then transported Cefalu to the police station where she was detained. The Jeep was towed to the police station and drugs were found in the trunk. Felony drug charges were subsequently brought against both Cefalu and Allen. These charges were later dropped against Cefalu. No charges were brought against either individual in connection with the stolen vehicle, although the vehicle was returned to the dealership in Iowa from which it had been stolen.

Cefalu initially filed a complaint against defendants alleging false arrest, unlawful search and seizure, and malicious prosecution. Prior to trial, however, she dropped her claims for unlawful search and seizure and malicious prosecution, and the sole issue for the jury at trial was her false arrest claim. After deliberating for approximately 1.5 hours, the jury reached a verdict in favor of both defendants.

Currently pending before the Court is plaintiff's motion for a new trial. Plaintiff argues that she is entitled to a new trial under Rules 59(a) and 60 of the Federal Rules of Civil Procedure. We address each of plaintiff's arguments below.

## II.    Plaintiff's Rule 59(a) Motion for A New Trial

Under Rule 59(a), in deciding whether to grant a new trial, we must determine whether "the verdict is against the weight of the evidence, ...or if for other reasons, the trial was not fair to the moving party." *Willis v. Lepine*, 687 F.3d 826, 836 (7th Cir. 2012). Plaintiff argues that she is entitled to a new trial under Rule 59(a) because: 1) the Court erred in not properly instructing the jury; 2) the Court erred in allowing Officer Rocuskie to testify about certain topics; 3) the Court erred in prohibiting plaintiff from using newspaper articles at trial; 4) evidentiary rulings made during the trial amount to

2

cumulative error; and 5) the jury's verdict is against the manifest weight of the evidence.

Before we begin our analysis, we note that although Rule 59(a) permits the Court to grant a new trial, as a practical matter, "a new trial should be granted 'only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the Court's] conscience.'" *Warfield v. City of Chicago*, 679 F. Supp. 2d 876, 882 (N.D. Ill. 2010) (*quoting Davis v. Wisconsin Department of Corrections*, 445 F.3d 971, 979 (7th Cir. 2006)). Indeed, "[g]ranting a new trial is not something to be done lightly." *Rasic v. City of Northlake*, No. 08 C 104, 2010 WL 3365918, at *6 (N.D. Ill. Aug. 24, 2010). Where a jury has reached a verdict, that verdict "will be set aside as contrary to the manifest weight of the evidence only if 'no rational jury' could have rendered the verdict." *Moore ex rel. Estate of Grady v. Tuelja*, 546 F.3d 423, 427 (7th Cir. 2008) (*citing King v. Harrington*, 447 F.3d 531, 534 (7th Cir. 2006)).

In addition, "[t]he party seeking a new trial based on alleged legal errors 'bears a heavy burden.'" *Rasic*, 2010 WL 3365918, at *6 (*quoting Alverio v. Sam's Warehouse Club, Inc.*, 253 F.3d 933, 939 (7th Cir. 2001)). "The party first must show an abuse of discretion in the Court's rulings, which alone is a steep hill to climb." *Id.* She must then "show that any alleged errors were substantial enough to deny [her] a fair trial, which requires proof that a significant chance exists that they affected the outcome of the trial." *Rasic*, 2010 WL 3365918, at *6 (internal quotations omitted).

**A. The Court Did Not Err In Denying Plaintiff's Request for Additional Jury Instructions**

Plaintiff first argues that this Court erred by refusing to include two jury

3

instructions she proposed on the issue of probable cause.  She asked the Court to include an instruction outlining a "particularity requirement" for probable cause.  She also asked the Court to include an instruction describing the elements for possession of a stolen vehicle under the Illinois criminal code.

"On a motion for a new trial based on improper instructions to the jury, we ask whether the instructions, when considered in their entirety and not in isolation, were sufficient to inform the jury of the applicable law."  *Alcala v. Emhart Indus. Inc.,* 495 F.3d 360, 363 (7th Cir. 2007).  To receive a new trial on this ground, the movant must demonstrate "both that the instructions did not adequately state the law and that the error was prejudicial to [her] because the jury was likely to be confused or misled."  *U.S. v. White*, 443 F.3d 582, 587-88 (7th Cir. 2006) (*citing Boyd v. Illinois State Police*, 384 F.3d 888, 894 (7th Cir. 2004)).  When assessing whether prejudice has resulted, the Court must consider the instructions as a whole, along with all the evidence and arguments in the case, and then decide whether the jury was misinformed about the applicable law.  *Id.*

**1.  Jury Instruction on the Particularity Requirement For Probable Cause**

In her proposed jury instructions, plaintiff submitted the following instruction ("Plaintiff's Proposed No. 6") to the Court, outlining a particularity requirement for probable cause:

> Where the standard is probable cause, a seizure or arrest of the person must be supported by probable cause particularized with respect to that person, and this requirement cannot be undercut or avoided simply by showing that there exists probable cause to seize or arrest another person who is nearby.  A person's mere proximity to others independently suspected of criminal activity does not, without more, give rise to probable cause to seize or arrest that person.

4

This proposed instruction was in addition to Plaintiff's Proposed No. 5, which was the standard probable cause instruction that the parties had agreed to (taken nearly *verbatim* from the Seventh Circuit Pattern Jury Instruction 7.06), and which this Court adopted. Plaintiff's Proposed No. 5 stated (in relevant part):

> There is probable cause for an arrest if at the moment the arrest was made, a prudent person would have believed that Plaintiff had committed a crime. In making this decision, you should consider what Defendants knew and what reasonably trustworthy information Defendants had received.
>
> It is not necessary that Defendants had probable cause to arrest Plaintiff for drug possession, so long as Defendant had probable cause to arrest her for some criminal offense.
>
> Probable cause requires more than just a suspicion. But it does not need to be based on evidence that would be sufficient to support a conviction, or even a showing that Defendant's belief was probably right. The fact that the charges against Rosalia Cefalu of drug possession were later dismissed does not by itself mean that there was no probable cause at the time of her arrest.

At the instructions conference during trial, we denied plaintiff's request to include the particularity requirement in Plaintiff's Proposed No. 6 because, as the Court explained, it could confuse the jury.

Plaintiff now argues that the Court erred in denying her request to include the particularity requirement. Plaintiff argues that the Court's failure to include the instruction caused the jury to be confused about whether they could find there was probable cause to arrest Cefalu based on the actions of Allen, the driver of the vehicle. We disagree. The jury instructions, as they were given, clearly explained that in order to find for defendants, the jury needed to find that defendants had probable cause to arrest plaintiff. It was never suggested that probable cause to arrest Allen would also give the defendants probable cause to arrest Cefalu. The probable cause standard was

5

articulated clearly and adequately (in accordance with the Seventh Circuit's patterned instructions) in Plaintiff's Proposed No. 5 and there was no need for an additional instruction. Indeed, as we explained at trial, we find that including the particularity requirement would do more to confuse the jury because Allen was not a party to the case and the jury was not evaluating whether there was probable cause to arrest him. Therefore, we are not persuaded by plaintiff's argument that the Court's failure to include this instruction is grounds for a new trial.

**2. Jury Instruction Regarding the Illinois Criminal Statute on Possession of a Stolen Vehicle**

Throughout the trial, Cefalu argued that the Illinois statute on possession of a stolen vehicle (or criminal trespass to a stolen vehicle) includes an element of knowledge. Plaintiff's counsel argued that there was no evidence that plaintiff knew the car was stolen. According to plaintiff's counsel, because defendants had no evidence of Cefalu's knowledge, they could not have had probable cause to arrest her. In order to demonstrate this theory of her case, plaintiff asked the Court to include the following instruction (Plaintiff's Proposed Instruction 6A"): "A person commits the offense of possession of a stolen vehicle when that person possesses a vehicle when not entitled to possession of the vehicle and when knowing it to have been stolen." During the instructions conference, plaintiff's counsel argued that this instruction was necessary because "the jury needs to be told that knowledge is an essential element of the potential charge of possession of a stolen motor vehicle." The Court disagreed and found that the knowledge element was relevant to the ultimate guilt or innocence of plaintiff, not whether defendants had probable cause to arrest her. For this reason, we

held that the language in this instruction should not be put in front of the jury. We stated that we would allow plaintiff's counsel to tell the jury during closing argument that plaintiff lacked knowledge that the car was stolen, but we would not include this in the jury instructions.

After the jury had deliberated for a short time, they asked two questions of the Court: 1) "What is the Illinois statute, if any, concerning occupants of a stolen vehicle?"; and 2) "What component of the U.S. Constitution does plaintiff claim to have had violated by the defendants? What is the relevant text?" After reviewing the questions, the Court conferred with the parties, and plaintiff's counsel argued again that Plaintiff's Proposed Instruction 6A was necessary to answer the first of the jury's two questions. The Court maintained that this was not an appropriate instruction, and responded to the jury's question with a note stating, "Members of the jury, you are to rely on the instructions that the Court has previously given you."

Plaintiff now argues that it was prejudicial for the Court to refuse to instruct the jury that knowledge is a requisite for the underlying Illinois criminal violation of possessing a motor vehicle. Plaintiff asserts that the prejudice is evidenced by the jury's question and that the jury was clearly confused. Plaintiff further argues that it was imperative for the jurors to have this instruction because they would have concluded, based on plaintiff's testimony, that she did not know the Jeep was stolen and therefore, there was no probable cause to arrest her.

Plaintiff's argument misstates the law. In order to establish probable cause, it is not necessary for an officer to establish every element of a crime. *Matthews v. City of East St. Louis,* 675 F.3d 703, 706-07 (7th Cir. 2012) ("the sufficiency of the evidence for

7

a determination of probable cause need not be enough to support a conviction or even enough to show that the officer's belief is more likely true than false."). "The Constitution permits them to initiate the criminal process and leave the sifting of competing claims and inferences to detectives, prosecutors, judges and juries in the criminal prosecution." *Therkield v. City of Chicago,* 11-cv-5079, 2013 WL 3944185, at *5 (N.D. Ill. July 31, 2013) (disregarding plaintiff's argument that the officers failed to obtain some evidence that the accused had the required mental state prior to arresting him). In other words, "probable cause...does not require the police to act as a judge or jury to determine whether a person's conduct satisfies all of the essential elements of a particular statute." *Wells v. City of Chicago*, 896 F. Supp. 2d 725, 735 (N.D. Ill. 2012) (*citing Stokes v. Bd of Educ.*, 599 F.3d 617, 622-23 (7th Cir. 2010); *see also Therkield*, 2013 WL 3944185, at *5 ("the law does not require that a police officer conduct an incredibly detailed investigation at the probable cause stage"); *Matthews,* 675 F.3d at 706-07 ("once probable cause has been established, officials have no constitutional obligation to conduct further investigation in the hopes of uncovering potentially exculpatory evidence"). "Rather, probable cause involves the exercise of judgment." *Wells,* 896 F. Supp. 2d at 735.

Here, the jury found that the facts and circumstances at the time of the arrest were enough to justify defendants' belief that Cefalu was committing or had already committed a crime. There was no need for an instruction that she needed to have knowledge that the vehicle was stolen. Nothing required the defendant officers to make a determination at the time of the traffic stop as to whether Cefelu knew that the car was stolen. Even if they had asked her, they were not required to take her word for it.

8

Neither Cefalu nor her boyfriend in the driver's seat had a viable explanation for why the vehicle may be reported as stolen or why the registration documents were not typical of Secretary of State documents. The officers had verified information that the car was stolen. Under these circumstances, they did not necessarily have to prove, on the side of the road during the traffic stop, that plaintiff knew the vehicle was stolen in order to arrest her. Counsel was permitted to make his argument to the jury that knowledge is an essential element for these crimes and that Cefalu did not know the vehicle was stolen. We stand by our previous holding that including the instruction that knowledge was required would cause potential confusion. For these reasons, we do not believe the Court's refusal to instruct the jury on the knowledge requirement was error.

**B. The Court Did Not Err In Excluding The Newspaper Articles From Evidence**

Next, plaintiff argues that the Court erred in prohibiting her from using local newspaper articles about her arrest at trial. In a motion in limine, defendants moved to exclude testimony about the articles. In response to that motion, plaintiff argued that the articles were relevant to the damages she claims to have suffered as a result of the false arrest. In our ruling on the issue, we held that plaintiff would be permitted to refer to the newspaper articles with proper foundation. At the pretrial conference, the Court also addressed this issue. At that time, the Court reiterated that plaintiff would be permitted to refer to the articles, but the Court held that it would be "very prejudicial" to actually show the articles to the jury. The Court also noted during the pretrial conference that if the parties wanted to revisit the issue at trial, they were welcome to do so.

At trial, plaintiff did refer to the newspaper articles in her testimony. She

discussed in detail the impact these publications in the local paper had on her and her mother. Plaintiff's counsel also mentioned these articles during his opening statements. Plaintiff never sought to introduce the articles into evidence, nor did her counsel request a sidebar at trial to revisit the issue. Because the jury was made aware of the existence of the articles and the effect they had on plaintiff, we do not find that the Court's refusal to allow the jury to actually see the articles warrants a new trial.

**C. The Court Did Not Err In Allowing Officer Rocuskie To Testify Regarding Legal Conclusions**

Plaintiff next argues that the Court erred by allowing Officer Rocuskie to testify about whether there was probable cause to arrest Cefalu for possession of a stolen vehicle or criminal trespass to a stolen vehicle. She argues that this was an impermissible legal conclusion, which could lead the jury to place too much weight on that testimony or could otherwise confuse the jury.

At the outset, we note that counsel for plaintiff never made this objection during Officer Rocuskie's testimony regarding probable cause. Plaintiff's counsel never argued at trial that Officer Rocuskie's testimony amounted to impermissible legal conclusions. As a result, the issue is waived. *Christmas v. City of Chicago,* 682 F.3d 632, 640 (7th Cir. 2012) ("By failing to object, plaintiffs may not raise the issue for the first time in a motion for a new trial or on appeal"); *Spina v. Forest Preserve Dist. of Cook County,* 207 F. Supp. 2d 764, 770 (N.D. Ill. 2002) (a party cannot raise an objection in a post-trial motion that it did not raise at trial).

However, even if plaintiff had made the appropriate objection during trial, we do not believe that Officer Rocuskie's testimony warrants a new trial here. The only issue

for the jury to decide in this case was whether defendants had probable cause to arrest Cefalu. Officers have probable cause to make an arrest if, at the moment the arrest was made, "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed an offense." *Miles v. McNamara,* No. 13 C 2395, 2014 WL 94884, at *3 (N.D. Ill. Mar. 11, 2014). Therefore, it was appropriate for Officer Rocuskie to testify regarding the facts and circumstances that led to his belief that Cefalu was committing an offense, and the nature of that offense. As a defendant in the case, he is entitled to tell his side of the story. His statement that he believed he had probable cause to arrest her is not reversible error.

In fact, it was plaintiff's counsel that led Officer Rocuskie through this testimony regarding whether he had probable cause to make the arrest. Plaintiff's counsel then asked Officer Rocuskie what evidence he had possessed at the scene of the traffic stop that led him to believe he had probable cause to arrest Cefalu. Plaintiff's counsel asked Officer Rocuskie whether he understood that probable cause was the central issue in the case. He also asked Officer Rocuskie whether he also understood that "just because [Officer Rocuskie] says there was probable cause, it doesn't necessarily make it true." During this line of questioning, the Court instructed the jury that they would be the ultimate judge as to whether there was probable cause to arrest Cefalu. The jury was also given the jury instructions outlining the appropriate standard for probable cause, and it is well-settled that "the jury is presumed to follow the Court's instructions on the law." *Graham v. Dolan*, No. 08 C 889, 2012 WL 1144662, at *4 (N.D. Ill. Apr. 5, 2012). We find that there was no risk of confusion here because it was clear to the jury

that they would be deciding the issue of probable cause in light of all the facts and evidence presented during the trial.

Plaintiff relies on *Ochana v. Flores*, 347 F.3d 266, 272 (7th Cir. 2003), for the proposition that the Seventh Circuit has held that "is error to allow evidence of the defendant police officer's subjective belief that they had probable cause." (Pl's Reply at 8.) But that is not what the Seventh Circuit held in *Ochana*. In that case (which was disposed of on defendants' motion for summary judgment), the District Court had stated that "the officer's subjective belief that they had probable cause is 'central' to [the] case." The Seventh Circuit held that this was a misstatement of the law because "it is well-established that an arresting officer's personal knowledge of facts sufficient to constitute probable cause is significant, but an arresting officer's subjective beliefs are not relevant." *Id.* The Court explained that this is because "the determination whether a sufficient legal basis existed for an arrest is an objective one," and therefore, the "subjective belief of the officers... is not 'central'." *Id.* Here, plaintiff's counsel asked Officer Rocuskie about his subjective beliefs and, without objecting, allowed him to testify on direct examination regarding his belief that he had probable cause. Under these circumstances, Officer Rocuskie's testimony regarding his subjective belief that he had probable cause does not warrant a new trial.

We also disagree with plaintiff's argument that the Court erred in allowing Officer Rocuskie to testify about the Cook County State's Attorney's office policy regarding out of state complainants. At trial, Officer Rocuskie testified that the vehicle had been stolen from an Iowa car dealership, and the State Attorney's office generally does not prosecute this type of crime because it is difficult to get an out of state witness to travel

to Illinois to testify. Again, we find that there was nothing improper about this testimony. Officer Rocuskie was testifying as to his belief in light of his experience as a police officer. Over plaintiff's counsel's objection, the Court instructed Officer Rocuskie to answer based on his experience. Plaintiff also had the opportunity to question Officer Rocuskie regarding his knowledge of this policy. Therefore, this testimony does not warrant a new trial.

### D. There Was No Cumulative Prejudicial Error Here

Contrary to plaintiff's assertion, we do not find that there were so many erroneous evidentiary rulings, improper statements by defense counsel, and lack of instruction of applicable law such that cumulative prejudice occurred. To prevail on a cumulative effect argument, "plaintiff must show: 1) that multiple errors occurred at trial; and 2) those errors, in the context of the entire trial, were so severe as to have rendered [the] trial fundamentally unfair." *Christmas,* 682 F.3d at 643. "If there are no errors or a single error, there can be no cumulative error." *United States v. Allen*, 269 F.3d 842, 847 (7th Cir. 2001). For the reasons we have already stated in response to plaintiff's arguments above, we do not find that there was any error here. Therefore, plaintiff has not met the standard for cumulative effect.

### E. The Jury's Verdict Was Not Against the Manifest Weight of the Evidence

Next, plaintiff argues that the jury's verdict was against the manifest weight of the evidence. "A court will set aside a verdict as contrary to the manifest weight of the evidence only if no rational jury could have rendered the verdict." *Whitehead v. Bond,* 680 F.3d 919, 928 (7th Cir. 2012). A court cannot grant a new trial "just because it

believes the jury got it wrong." *Id.* "Even when evidence is contradictory, it's the jury's job - not the district court's job or the job of a panel of appellate judges - to figure out who's telling the truth." *Id.* "We will not supplant the jury's reasonable and factually supported verdict with our own judgment." *Id.*

The main issue for the jury to decide here was whether defendants had probable cause to arrest plaintiff. As plaintiff correctly points out, the defendants had probable cause "if, at the moment the arrest was made, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that an offense has been committed." *Griffin v. City of Chicago,* 406 F. Supp. 2d 938, 944 (7th Cir. 2005); *Cooper v. City of Chicago,* No. 12-cv-5104, 2013 WL 6406198, at *2 (N.D. Ill. Dec. 5, 2013). "In evaluating whether it was reasonable to believe a crime was being or had been committed, we consider the situation as it would have appeared to the officer at the time of the arrest." *Griffin*, 406 F. Supp. 2d at 944-45.

Here, we do not believe the jury's verdict was against the manifest weight of the evidence. Cefalu was in the vehicle at the time that it was stopped for expired license plates. At the time of the stop, Officer Rocuskie was notified that the vehicle was reported stolen. Neither Allen nor Cefalu offered any explanation for why the car was reported stolen. The registration documents that Allen did provide to Officer Rocuskie were not typical of Secretary of State documents (one was handwritten), one actually stated another individual's name, and when Officer Rocuskie first called in the registration, there was nothing on file. As Officer Rocuskie explained, he chose to bring both individuals in to the station for questioning in order to sort out who was responsible

14

for the stolen vehicle. We believe the jury acted reasonably in finding that defendants' actions with respect to Cefalu were justified.

Plaintiff argues that Cefalu was not engaged in criminal activity at the time of her arrest. But the issue is not whether she was in fact committing a crime; rather, the issue is whether the officers reasonably found there was probable cause to believe she was committing a crime in light of the facts they were aware of at the time of the arrest. *See, e.g., Miles,* 2014 WL 948884, at *3 ("Probable cause is evaluated not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person *in the position of the arresting officer* - seeing what he saw, hearing what he heard."). The issue of whether there was probable cause is one best left for the jury. *Id.* at *4. Based on the evidence presented at the trial, the jury found that defendants acted reasonably. We do not believe the jury's finding here is against the manifest weight of the evidence, and plaintiff's motion for a new trial on these grounds is denied.

## II. Plaintiff's Rule 60(b) Motion For New Trial

Finally, plaintiff argues that she is entitled to a new trial under Rule 60(b)(3). That rule provides that a court may grant relief from a final judgment, order or proceeding in the case of "fraud..., misrepresentation or misconduct by an opposing party." To obtain relief under this provision, "a party must show that she has a meritorious claim that she was prevented from fully and fairly presenting at trial as a result of the adverse party's fraud, misrepresentation or misconduct." *Willis*, 687 F.3d at 833 (*citing Wickens v. Shell Oil Co.*, 620 F.3d 747, 758 (7th Cir. 2010)).

Here, plaintiff argues that defense counsel misrepresented the law during her

closing argument. In particular, plaintiff contends that defense counsel told the jury that because plaintiff was a passenger in a stolen vehicle, she was (at minimum) engaged in criminal trespass to a vehicle. Plaintiff argues that defense counsel's statement is not true, in light of the District Court's statement in *Griffin v. City of Chicago* that "[a]lthough a police bulletin can give an officer probable cause for arrest, it does not give him carte blanche to arrest a passenger of a stolen vehicle if the officer has no reason to suspect that the passenger knows that he lacks permission to be in the vehicle." 406 F. Supp. 2d at 945.

We do not believe that defense counsel's comments here warrant a new trial. The Seventh Circuit has repeatedly noted that "improper comments during closing argument rarely rise to the level of reversible error." *Willis*, 687 F.3d at 834 ("A new trial is warranted only if allegedly improper closing remarks depart from the evidence presented at trial and result in substantial prejudice to the opposing party"); *Christmas*, 682 F.3d at 642-43. The jury was instructed a number of times that they should not consider what they heard in closing arguments as evidence. Therefore, any confusion that may have been caused here was alleviated with the Court's curative instruction. *See, e.g., Christmas*, 682 F.3d at 641-42 (defense counsel's allegedly improper comments during closing did not present grounds for new trial where, among other things, the Court instructed the jury that closing arguments were not to be considered evidence); *see also Willis,* 687 F.3d at 834 (same). We do not believe that substantial prejudice to plaintiff resulted from defense counsel's comments and there is no need for a new trial on these grounds.

## IV. CONCLUSION

For the reasons set forth above, plaintiff's post-trial motion is denied.

ENTERED:

_____
**MICHAEL T. MASON**
**United States Magistrate Judge**

**Dated: April 17, 2014**